## FORT WORTH LEAD & ZINC CO. v. ROBINSON, Ex'r, et al.

No. 10889—Opinion Filed May 1, 1923.

(Syllabus.)

1. **Pleading—Waiver of Defective Verification.**

Where the sufficiency of a verification to an answer denying the execution of a note and mortgage is not challenged in the trial court by motion to strike, the defects in said verification will be treated as waived.

2. **Pleading—Answer in Action on Note—Burden of Proof.**

Where, in an action on a note and mortgage, the defendant filed a verified answer denying each and every allegation of the petition not specifically admitted, and as affirmative defenses pleaded a counterclaim and failure of consideration of the note made the basis of the action, held, that the averments of the answer had the effect of overruling or neutralizing the general denial, and imposed the burden of proof upon the defendant.

3. **Set-Off and Counterclaim — Statute—"Transaction"—Torts.**

The term "transaction", as used in section 4746, Rev. Laws 1910, relating to a counterclaim, is broader in meaning than the word "contract", and includes torts, and the court may in one action settle all matters in controversy between the parties relating to the contract or transaction which is the foundation of the action.

4. **Same—Counterclaim.**

A defendant may plead and prove, as a counterclaim, any cause of action he may have against the plaintiff, whatever its nature, arising out of the cause of action alleged in the petition or connected therewith.

Error from District Court, Ottawa County; S. C. Fullerton, Judge.

Action by J. E. Pottorf and W. M. Smith against the Fort Worth Lead & Zinc Company, on note and chattel mortgage. Judgment for plaintiffs, and defendant brings error. Upon death of Pottorf, cause revived in name of J. F. Robinson, executor of his estate. Reversed and remanded.

Dick Rice, for plaintiff in error.

L. A. Wetzel, for defendants in error.

NICHOLSON, J. This was an action by J. E. Pottorff and W. M. Smith, as plaintiffs below, against the plaintiff in error, as defendant below, to recover judgment upon a promissory note executed and delivered by the defendant to the plaintiffs' and for the foreclosure of a chattel mortgage securing the payment of said note.

It was alleged in the petition, in substance, that the plaintiffs had a special ownership in a certain mill and concentrating plant consisting of mill building, engines, boilers, giggs, pumps, belting, and all equipment, appliances, etc., located on certain land in Ottawa county, by virtue of a chattel mortgage executed and delivered by W. H. Logan, as agent and trustee for the defendant, to M. H. Roe, R. E. Wiley, C. L. Turner, A. L. Carpenter, S. S. Smith, F. Carmody, Jess Compton, John H. Irwin, J. L. Allington, W. C. Taylor, and William Brockman, dated September 22, 1917, and given to secure the payment of a promissory note of that date for the sum of $7,000, with interest thereon at the rate of 6 per cent. per annum, and payable to the order of the above-named parties; that said note and mortgage were, for value received and before maturity, sold, assigned, and transferred to the plaintiffs; that on March 22, 1918, the date of the maturity of said note, the same was renewed by the execution and delivery of a note by the de-

fendant to the plaintiffs for the sum of $7,-210, which included the accrued interest, and which matured six months from its date; that no part of the indebtedness which said mortgage secured had ever been paid, though the same was past due, and that the defendant unlawfully withheld the property described in the mortgage from the plaintiffs; and prayed judgment for the sum of $7,210, with interest, and for the foreclosure of said mortgage.

The defendant's answer, after denying each and every allegation in the petition, except those specifically admitted, contained the following allegations:

"For further answer, and defense and by way of cross-petition, this defendant alleges: That it is a mining corporation organized under the laws of the state of Oklahoma, with its principal business in Ottawa county; that the plaintiff J. E. Pottorff, George Huntley, and W. M. Smith, at the dates of the several transactions herein mentioned, were claiming to be the owners of the right to mine or a contract for a mining lease on the southwest quarter of the northwest quarter of section 28, township 29, range 23, and that in the month of September, 1917, W. H. Logan and J. W. Morris, representing and acting for this defendant, entered into negotiations with the said Pottorff for the purchase of a mining lease on said real estate. That said negotiations were carried on with J. E. Pottorff, acting for himself and for his co-plaintiff, George Huntley and W. M. Smith. That in the course of such negotiations the plaintiff, Pottorff, falsely and fraudulently, with the intent to deceive and defraud this defendant, the Fort Worth Lead & Zinc Co., represented and stated that the title to the mining rights on said land was good and that the person under whom he and Huntley derived the title or the right to mine said land had a mining lease on said land from the owner, and that he, the said Pottorff, Smith and Huntley, had the right and could convey, and deliver to this defendant, a mining lease on said land, and proposed to said Logan and Morris, acting for this defendant, that this defendant purchase and buy out the rights of M. H. Roe and R. E. Wiley, who were in possession of said land, under the said Pottorff, Smith, and Huntley, and that if this defendant would prospect and develop said land, and build a mill or concentrating plant thereon, that he, the said Pottorff, Smith, and Huntley, would execute and deliver to this defendant a good and valid mining lease on said land for a period of ten years.

"That this defendant knew nothing about the title to the mining lease and rights on said land, but relied upon the statements made by said Pottorff, as aforesaid, and purchased the rights of said Roe and Wiley in and to said land, and paid them therefor the sum of $5,000 in cash and executed its note for $7,000, and agreed to pay Pottorff, Smith, and Huntley a bonus of $40,000 for said mining lease, and this defendant entered into possession of said land, and begun to prospect, and develop the ore body thereon, and construct a mill or concentrating plant thereon at the cost and expense of $90,000.

"That said mill or concentrating plant was completed about the 1st of May, 1919, and this defendant thereupon demanded of the plaintiffs that they execute and deliver said lease to it, which they refused to do, and that by reason thereof this defendant has been injured and damaged in the sum of $90,000, for which it prays judgment.

"Further answering, this defendant alleges that the consideration for the note and mortgage sued on has failed, and that said note and mortgage are therefore void."

A reply consisting of a general denial was filed. Upon the issues thus presented, a trial resulted in a judgment in favor of the plaintiffs, from which the defendant has appealed.

After the appeal was lodged in this court the plaintiff J. E. Pottorff died, and the cause has been revived in the name of J. F. Robinson, executor of his estate.

The trial court held that the burden of proof was upon the defendant, and of this complaint is made. The burden of proof is determined by the pleadings, so it becomes necessary to ascertain whether or not the answer put in issue the execution of the note and mortgage.

The defendants in error insist that the affidavit verifying the answer does not comply with the statutory requirements, and is so defective that it amounts to no verification at all, and therefore the execution of the note and mortgage was admitted, but it is unnecessary for us to pass upon this question, for the reason that the sufficiency of the verification was not challenged in the trial court by motion to strike or otherwise, and under these circumstances the defects therein will be treated as waived. Doughty v. Funk, 24 Okla. 312, 103 Pac. 634; Stanley v. Cruce, 57 Okla. 127, 157 Pac. 135; Effenberger et al. v. Durant et al., 57 Okla. 445, 156 Pac. 212; Hastings v. Hugo National Bank, 81 Okla. 189, 197 Pac. 457.

It appears from the record that the trial court based his ruling that the burden was upon the defendant, not upon the faulty verification to the answer, but upon the averment in the answer wherein, after denying each and every allegation set forth in the petition, except those therein specifically admitted, a counterclaim was pleaded, as well as a failure of consideration for the note.

So that, treating the answer as duly verified, the question is whether or not the averments of the answer had the effect of overriding or neutralizing the general denial and imposing the burden of proof upon the defendant. We think they did. The counterclaim pleaded was based upon the transaction involving the execution of the note and mortgage made the basis of plaintiffs' claim. It is clear that such counterclaim could not have existed if the defendant had not executed the note and mortgage. The statements of fact contained in the answer show that these instruments were executed by or on behalf of the defendant, and the court did not err in imposing the burden of proof upon it.

Complaint is next made of the action of the court in refusing to permit the defendant to prove the allegations of its answer above quoted.

By the provisions of section 4745, Rev. Laws 1910, the answer shall contain, first, a general or special denial of each material allegation of the petition controverted by the defendant; second, a statement of any new matter constituting a defense, counterclaim, or set-off or a right to relief concerning the subject of the action; third, where relief is sought, the nature of the relief to which the defendant supposes himself entitled, and the defendant may set forth in his answer as many grounds of defense, counterclaim, set-off and for relief as he may have.

Section 4746, Rev. Laws 1910, provides that the counterclaim mentioned must be one existing in favor of the defendant and against the plaintiff between whom a several judgment might be had in the action, and arising out of the contract or transaction set forth in the petition as the foundation of the plaintiff's claim or connected with the subject of the action.

The sufficiency of the answer was not challenged in any way, and it is averred therein that W. H. Logan and J. W. Morris, acting for the defendant, entered into negotiations with the plaintiffs for the purchase of a mining lease on certain lands; that in the course of such negotiations the plaintiff, acting for himself and the plaintiff Smith, falsely and fraudulently, with the intent to deceive and defraud the defendant, stated and represented that the title to the mining rights on the land was good; that he and his associates had the right to and could convey and deliver to the defendant a mining lease on the land; and proposed to Logan and Morris that the defendant purchase the rights

of M. H. Roe and R. E. Wiley, who were in possession of said land under said Pottorff and his associates, and if the defendant would prospect and develop the land and build a mill or concentrating plant thereon, that Pottorff and his associates would execute and deliver to the defendant a good and valid mining lease on said land for a period of ten years; that relying upon said representations, the defendant purchased the rights of Roe and Wiley and paid therefor the sum of $5,000 in cash and executed its note for $7,000, and agreed to pay Pottorff and his associates a bonus of $40,000 for said lease; that the defendant entered upon said land, developed the ore body thereon, and constructed a mill or concentrating plant thereon at the cost of $90,000; that upon the completion of said mill, the defendant demanded of the plaintiffs that they execute and deliver to it said lease, but that the plaintiffs refused to do so, and that because thereof the consideration for the note had failed.

It is disclosed by the record that this note for $7,000, which was secured by the chattel mortgage sought to be foreclosed, was by Roe, Wiley, and the other parties thereto assigned to the plaintiff, and in renewal thereof the note for $7,210 was executed. The defendant on several occasions offered testimony tending to show that the notes and mortgage sued upon arose out of the statements and representations made by the plaintiffs to Logan and Morris, and that such representations and statements were a part of the transaction involving the execution of the notes and mortgage, but the court refused to permit the witnesses to testify as to any facts pertaining to such representations, and refused to permit the defendant to introduce any testimony seeking to sustain the averments of its answer quoted above. The court evidently proceeded upon the theory that such answer pleaded a tort against the plaintiffs, and such tort did not arise out of the contract or transaction made the basis of the action. In this, we think, the court erred.

While the courts have not arrived at a wholly satisfactory definition of the term "transaction" as used in the Code provisions relating to counterclaim, it is quite generally agreed that it is broader in meaning than the word "contract", and includes torts; otherwise, it would not have been employed. It is clear that it was the intention of the framers of the Code that the court in one action might settle all matters in controversy between the parties relating to the contract or transaction which is the

foundation of the action. Therefore, any cause of action, whatever its nature, arising out of the cause of action alleged in the petition or connected therewith in favor of the defendant and against plaintiff is a proper counterclaim. Wyman v. Herard, 9 Okla. 35, 59 Pac. 1009; Cooper v. Gibson, 69 Oklahoma, 170 Pac. 220; Bonnerot v. McClure (Colo.) 90 Pac. 70; Scott v. Waggoner (Mont.) 139 Pac. 454; Northwestern Port Huron Co. v. Iverson (S. D.) 117 N. W. 372, 24 R. C. L. 844.

If, as alleged, the defendant was induced to execute the note and mortgage upon the statements, representations, and agreements of the plaintiffs that they would execute to it a mining lease upon the land upon certain conditions, and if those conditions have been performed by the defendant, it has a cause of action against the plaintiffs for a breach of this agreement, and as this cause of action arose out of the transaction set forth in the petition as the foundation of plaintiffs' claim, and was connected with the subject of the action, it was a proper subject of counterclaim, and the court should have permitted the defendant to make proof thereof.

For the reasons stated, the judgment of the trial court is reversed, and the cause remanded for a new trial.

JOHNSON, C. J., and McNEILL, BRANSON, COCHRAN, and MASON, JJ., concur.