TEXAS CO. v. FORSON.

No. 32093.   March 26, 1946.

167 P. 2d 877.

Crump & Carver, of Wewoka, and John R. Ramsey and B. W. Griffith, both of Tulsa, for plaintiff in error.

W. A. McDaniel and Charles E. Grounds, both of Seminole, for defendant in error.

ARNOLD, J. A. T. Forson commenced this action on July 12, 1942, against the Texas Company, a corporation, for an alleged indebtedness of $1,020 claimed to be due him as commissions for the sale of products of the defendant.

By cross-petition the defendant claimed damages against the plaintiff for the unlawful detention by him of certain premises which it owned and an indebtedness owed to it by plaintiff for certain credit accounts for goods sold by plaintiff to various parties without authorization in the sum of $336 and a personal indebtedness of plaintiff to it in the sum of $71.49. A jury was waived by the parties and the issues raised by the pleadings tried to the court resulting in a judgment in favor of plaintiff for the sum of $598.69. Both parties asked for written findings of fact and conclusions of law.

The parties entered into a stipulation of facts at the outset of the trial which, so far as is material here, shows that for some time prior to April 1, 1941, plaintiff was in possession of defendant's wholesale warehouse and engaged in the selling of its products by a written consignment agreement; that pursuant to the terms and provisions of said consignment agreement such arrangement was terminated April 1, 1941; that on or about April 2, 1941, the defendant demanded possession of its building and all of its products then stored therein and possessed by the plaintiff; the demand was refused and the plaintiff remained in possession of defendant's building and said personal property, and continued as theretofore to sell said products remitting the proceeds thereof to the defendant; that between April 1, 1941, and July 11, 1941, the date on which possession of the building in question

was delivered to defendant on writ of execution out of the justice of the peace court wherein it was adjudged it was entitled to possession thereof, the commissions earned, according to the rate provided in the consignment contract, were $856.07; that 'the judgment for restitution of the building was entered in the justice of the peace court on the 30th day of June, 1941. In addition to this stipulation of the parties oral evidence was introduced on both sides. The material portions of this oral testimony will be referred to as it becomes pertinent in the discussion of the questions raised in the briefs. The parties will be herein referred to as plaintiff and defendant as they appeared in the trial court.

Defendant has assigned 23 specifications of error, but in its brief these are presented under four propositions as follows:

"(1). Plaintiff was a converter of the defendant's goods.

"(2). There was no implied contract by defendant to pay commissions.

"(3). The exclusion of the defendant from its warehouse was wrongful.

"(4). The defendant was entitled to judgment against plaintiff under its cross-petition."

These propositions will be discussed under the findings made by the trial court to which they relate. The first finding made by the trial court reads:

"The court finds from the evidence introduced herein, together with the stipulation, that the plaintiff was in lawful possession of the premises in question herein on April 1, 1941, and same was continuous until June 30, 1941."

Defendant's third proposition quoted above is directed to this first finding by the trial court. There was oral testimony to the effect that after the termination of the consignment contract by written notice, as above provided and stipulated by the parties, and on the 2nd day of April, 1941, representatives of the Texas Company went to Seminole and demanded possession of the warehouse and of the defendant's products therein and that possession thereof was refused by the plaintiff upon the ground that he had some "equitable claim" against the Texas Company by reason of former contracts and transactions between the parties. Similar demands were made subsequently on two or three occasions with the same result. This testimony is not denied by the plaintiff but is, in effect, admitted to be correct. Thereupon the defendant instituted a forcible and unlawful detainer action in a justice court of Seminole county, and on June 30, 1941, judgment was rendered therein in favor of this defendant for restitution of the premises. This was a judicial determination that the refusal of plaintiff herein to deliver possession of the premises to the defendant was wrongful and nothing in the record discloses any reason why that wrongful refusal of possession on April 2, 1941, thereafter became changed into a rightful refusal of possession. The judgment determining the right to possession related to the date and time when defendant herein had a right to demand possession and when plaintiff herein had no right to refuse. This question was res adjudicata and not within the jurisdiction of the trial court to determine. Brown v. Higby, 191 Okla. 173, 127 P. 2d 195. We think this first finding of the trial court is not reasonably sustained by the evidence and is contrary to law.

The second finding of the trial court reads:

"During this time the plaintiff sold and exchanged certain merchandise of the defendant, turning the proceeds over to the defendant and defendant accepting same."

To this finding by the trial court defendant directs its first proposition quoted above, that by the acts of plaintiff he became a converter of defendant's goods. When plaintiff, upon demand, not only refused defendant possession of its warehouse but also refused it possession of its products stored therein, he was exercising a do-

minion over defendant's personal property inconsistent with its admitted ownership thereof. Plaintiff's right to the control and disposition of these products terminated on April 1, 1941, pursuant to the written notice given in conformity with the terms of the consignment contract; that plaintiff thereafter sold these goods, or a substantial portion thereof, and accounted to defendant for the proceeds of such sales does not change the character of his possession as being wrongful. During this period of three months from April 1 to June 30, 1941, plaintiff was not only denying defendant its right to the possession of its own property but he was also repudiating and violating a specific provision of the consignment contract between the parties. By section 3 of the consignment contract it is provided that in the event of the termination of this agreement the consignor shall have the right, for a period of not to exceed three (3) months following the date of such termination, to use the storage facilities at the Seminole Bulk Sales Station to store its products, replenish its stock of merchandise therein, to sell and deliver its products from the said premises and to remove all of its products and other properties therefrom during the said period. These were valuable rights possessed by the defendant after the termination of the contract and their denial by plaintiff is not justified by any evidence disclosed in this record. The finding of the trial court that the plaintiff remitted all of the proceeds of the sales of defendant's products, made by him after the termination of the consignment contract, is reasonably sustained by the evidence in this case, but no legal conclusion therefrom favorable to plaintiff can be drawn from this fact. He had no right to sell and dispose of defendant's property without its consent over its expressed demand for possession thereof and the conversion of said property by the plaintiff was not changed from a wrongful to a rightful act simply by accounting to the defendant for the proceeds derived from such wrongful act. In the case of Clark v. Whiteus, 69 Okla. 318, 171 P. 746, this court announced the law covering such transactions in this language:

"A wrongful sale of the chattels of another, coupled with a delivery of possession, is universally recognized as such an exercise of dominion over the chattels as to constitute a conversion by the seller. In such case it is immaterial that the seller makes the sale under the belief that the property is his own and in ignorance of the true owner's rights, and no demand is necessary before institution of suit."

To the same effect see George W. Brown & Sons State Bank v. Polen, 132 Okla. 121, 270 P. 9; Wilson & Company v. Russell, 144 Okla. 284, 290 P. 1106.

The third finding of the trial court reads:

"That on and after June 30, 1941, when judgment was rendered in favor of defendant against this plaintiff for restitution of the premises herein, plaintiff then became a trespasser and was unlawfully holding the premises of defendant and for such the defendant is entitled to a reasonable compensation for rent of use of said premises, reasonable rent according to the testimony of defendant's own witnesses would be $100 per month."

The vice in this finding of the trial court is that it declares the wrongful possession of plaintiff commenced on June 30, 1941, when possession of the premises was adjudged to be rightfully in the defendant. This judgment merely determined a fact which had existed since April 1, 1941. It did not create a new status nor a new relation of the plaintiff toward defendant and its property. There is no rule of law which supports the portion of this finding which declares that plaintiff became a trespasser only after June 30, 1941; that portion of the finding which states that the evidence discloses the rental value of the premises to be $100 per month during this three months' period is reasonably sustained by the evidence.

The fourth finding of the trial court reads:

"The court further finds that the defendant is indebted to this plaintiff for commissions on goods sold, the rate of which if same was due would by agreement of all parties hereto, be in the sum of $856.07; and that the defendant is entitled to a credit or offsets in the amount of $407.56 for goods, wares, merchandise and accounts assigned by it to plaintiff of which amount the defendant has agreed that plaintiff is entitled to a credit of $183.51; leaving a balance of $224.05 of which the defendant is entitled to credit or offset, together with the sum of $33.33 making total of which defendant is entitled to credit in the sum of $257.38."

Against this finding of the trial court defendant directs its argument under its second proposition and insists that there was no implied contract by defendant to pay commissions to plaintiff upon his sale of defendant's merchandise without its consent and over its objection.

The only theory upon which the trial court could have found the existence of an indebtedness from defendant to plaintiff for commissions on the sale of the former's goods was that of implied contract. An implied contract is defined by our statute, 15 O.S. 1941 § 133, thus:

"An implied contract is one, the existence and terms of which are manifested by the conduct."

If there was any implied contract in the instant case, it arose from the fact that defendant received and retained the proceeds from the sale of its goods by plaintiff while he was a converter thereof. These acts and the property sold were of such character that defendant could not pursue its products and recover them from the persons to whom plaintiff sold. Not only was there no consent by defendant to the sale of these goods, but it was objecting thereto and demanding possession from the plaintiff from the 1st day of April, 1941, until it received restitution of its warehouse by judgment of the justice court on June 30, 1941. There is nothing in the conduct of the parties during this period of time which manifests a mutual intention to contract, and since implied contracts are implied only from facts in evidence manifesting a mutual intention to contract, we think this finding of the trial court is without support in the evidence. In the case of First National Bank of Okmulgee v. Matlock et al., 99 Okla. 150, 226 P. 328, the third paragraph of the syllabus reads:

"A 'quasi' or constructive contract is an implication of law. An 'implied' contract is an implication of fact. In the former the contract is a mere fiction, imposed in order to adapt the case to a given remedy. In the latter, the contract is a fact legitimately inferred. In one, the intention is disregarded; in the other, it is ascertained and enforced. In one, the duty defines the contract; in the other, the contract defines the duty."

Upon these findings made by the trial court it based its judgment, which reads:

"It is therefore the judgment of this court that plaintiff have judgment against this defendant in the sum of $856.07 less $257.38 which is the amount of $598.69."

Defendant's fourth proposition is directed against this judgment of the trial court. Since the findings made by the trial court are not reasonably sustained by the evidence and are contrary to law, the judgment of the court based thereon is erroneous.

The judgment of the trial court is reversed and the cause remanded, with directions to grant a new trial.

GIBSON, C.J., HURST, V.C.J., and OSBORN, WELCH, and DAVISON, JJ., concur.