## ABBOTT et vir v. McCOY.

No. 35260.   March 3, 1953.

Rehearing Denied March 24, 1953.

*254 P. 2d 997.*

Walter Mathews, Cushing, for plaintiffs in error.

D. O. Cubbage, Cushing, and Guy L. Horton, Stillwater, for defendant in error.

DAVISON, J. By this action, Blanche Abbott and her husband, Fred Abbott, as plaintiffs, sought to recover from the defendant, N. C. McCoy, damages to their cafe business, allegedly resulting from the shutting off of light, air, and free access to their place of business by barricades and stacks of brick, lumber, and other building material placed around the cafe building by the defendant. The parties appear here in the same relative order as in the trial court and will be so referred to.

For several years, the plaintiffs had operated a cafe or restaurant in Cushing, Oklahoma, in what was known as the Harmon Building, when defendant bought the building in December, 1949. Plaintiffs' lease expired with the calendar year. They reached an agreement with defendant to continue to occupy the premises under a month to month tenancy. Shortly before July 1, 1950, the defendant gave the plaintiffs a thirty-day notice to terminate the tenancy. Immediately after August 1, 1950, defendant had plaintiffs served with a notice to quit and then filed a forcible entry and detainer action against them. During those first days of August, preparatory to rebuilding and remodeling, the defendant stacked brick, lumber, and building material in front of and at the side of the cafe. Late in the day, on August 8, 1950, while the plaintiffs were visiting in a nearby town, the defendant erected barricades around and over the building materials

which shut off all light and ventilation at the front of the building. Entrance to the building could be made only through a covered tunnel-like opening some four to five feet wide and sixteen feet long, extending from the front door of the cafe almost to the street.

On August 19, 1950, plaintiffs filed this action, seeking injunctive relief against further interference with their possession of the premises. Subsequently, an amended petition was filed, wherein, in addition to injunctive relief, plaintiffs sought to recover damages, both actual and punitive. Defendant's answer was coupled with a cross-petition, seeking damages resulting from plaintiffs holding over unlawfully after the termination of their tenancy. A trial of the issues to a jury resulted in a verdict and judgment for defendant upon the cross-petition in the sum of $700, from which plaintiffs have perfected this appeal.

The argument of plaintiffs, as presented by the briefs, is not subdivided and argued under separate propositions, but the situation involved presents several questions for determination.

The first question is that of plaintiffs' right to recover. Plaintiffs' case was tried and has been briefed on the sole theory that the defendant effected a constructive eviction of plaintiffs, causing them the alleged damages. But their right to recover is dependent upon the fact which is not here present. There can be no constructive eviction if the tenant remains in possession. Plaintiffs cannot recover for constructive eviction and at the same time seek to enforce their right to occupy the premises. In the case of Baptist General Convention, etc., et al. v. Wright et al., 136 Okla. 150, 276 P. 777, this court held that:

"Any disturbance of the tenant's possession by the landlord or by some one under his authority whereby the premises are rendered unfit for occupancy for the purpose for which they were demised, or the tenant is deprived of the beneficial enjoyment of the premises amounts to a constructive eviction, if the tenant abandons the premises within a reasonable time.

"There can be no constructive eviction without a surrender of possession by the tenant; a tenant who continues to occupy the premises for an unreasonable length of time after the acts or omissions that constitute a constructive eviction waives the eviction and cannot thereafter abandon the premises and assert it."

The next proposition, or defendant's right to recover, involves the determination of several questions. Plaintiffs insist that defendant should not be permitted to litigate in this action the matters set up in the cross-petition. The governing statute is that part of 12 O.S. 1941 §273, as follows:

"The counterclaim *** must be one existing in favor of a defendant and against a plaintiff, *** arising out of the contract or transaction set forth in the petition as the foundation of the plaintiff's claim or connected with the subject of the action ***."

This action as originally filed sought to prevent the defendant from interfering with plaintiffs' alleged lawful possession of the premises. The cross-action sought damages resulting from that possession, allegedly unlawful. Thus, plaintiffs' possession and the determination of its lawfulness was the foundation of the complaint and the cross-complaint. They both, therefore, arose out of the same transaction. In the case of Ft. Worth Lead & Zinc Co. v. Robinson et al., 89 Okla. 221, 215 P. 205, it was said,

"While the courts have not arrived at a wholly satisfactory definition of the term 'transaction' as used in the Code provisions relating to counterclaim, it is quite generally agreed that it is broader in meaning than the word 'contract' and includes torts; otherwise, it would not have been employed. It is clear that it was the intention of the framers of the Code that the court in one action might settle all matters in controversy between the parties relating to the contract or transaction,

which is the foundation of the action. Therefore any cause of action, whatever its nature, arising out of the cause of action alleged in the petition or connected therewith, in favor of the defendant and against plaintiff, is a proper counterclaim."

Plaintiffs further contend that the counterclaim cannot be the basis of litigation while a forcible detainer action is pending. There seems to be no merit in this contention in view of the former decisions of this court to the effect that the only issue, in a forcible entry and detainer action, is the right of possession. However, we need not determine the question because the record contains no competent evidence that such an action was pending or had been tried. Nothing is included in the case-made with regard thereto other than a copy of a summons which was served on the plaintiffs. Any statements in the briefs about the forcible entry and detainer action, except its mention by the witnesses, is outside the record.

The remaining question goes to the measure of defendant's damage. The trial court submitted to the jury only two of the several items set out in defendant's cross-petition. Those were the loss of rent from other tenants whose tenancies were terminated by the landlord relying upon the expectation that plaintiffs would surrender possession when their tenancy terminated, and the increase in the cost of remodeling occasioned by delay in commencing work as a result of plaintiffs holding over. One witness, a builder, testified that the removal of the stone around the building would cost some $3,500, which price had increased about ten per cent, and, further, that there was no market for the used stone. Defendant had contracted with one Pounds to do that work in return for the used rock. Mr. Pounds died while plaintiffs were still in possession of the premises some four months after the expiration of their tenancy, and, thus, defendant was deprived of the benefit of that contract because of plaintiffs' refusal to deliver possession. In addi-

tion to that detriment, the defendant was also damaged by a rise in labor costs of some ten per cent. The testimony on those points was sufficient to sustain the verdict of the jury for $700 recovery. That such items were proper elements in measuring the damages to a landlord was the holding of the California court in the case of Gwinn v. Goldman, 57 Cal. A. 2d 393, 134 P. 2d 915, wherein a similar situation was involved. In that jurisdiction, damages could be recovered in the same action wherein possession was sought. It was there said:

"The court did not err in allowing plaintiff special damages in the sum of $200 as increased cost of remodeling her building under contract with Henry Brown, incurred on account of the failure of the defendant to surrender possession of the property at the termination of his lease."

There, the amount of increased cost resulting from delay in beginning the work was fixed by the remodeling contract. Here, it was determined by the jury from the testimony of the witnesses. We see nothing unreasonable in the amount allowed, in view of the evidence of rise in cost of making repairs.

The judgment is affirmed.

HALLEY, C.J., JOHNSON, V.C.J., and WELCH, CORN, O'NEAL, WILLIAMS, and BLACKBIRD, JJ., concur.