H. W. BOLDING and C. W. Pruett, Plaintiffs in Error,

v.

C. C. CLANTON and Ida Clanton, Defendants in Error.

No. 36627.

Supreme Court of Oklahoma.

May 17, 1955.

Rehearing Denied June 14, 1955.

As Amended June 27, 1955.

214

Renegar & Renegar, Oklahoma City, for plaintiffs in error.

Bennett & Bennett, Oklahoma City, for defendants in error.

HALLEY, Justice.

C. C. Clanton and wife, referred to as Lessors, owned a tract of land facing south

600 feet on Southeast 29th Street in Oklahoma City and extending 600 feet north. They had erected a home and other improvements upon this land.

On September 28, 1952, Lessors entered into a written lease contract with H. W. Bolding, Jr. and C. W. Pruett, herein referred to as Lessees, whereby Lessors leased to Lessees a portion of the above land, facing 130 feet on Southeast 29th Street and extending north 150 feet, for filling station purposes. In January, 1953, H. W. Bolding, Jr. transferred his interest in the lease contract to his father, H. W. Bolding, Sr.

The following provisions of the lease contract are necessary to an understanding of the issues involved:

(a) The term of the lease was 10 years from September 28, 1952, with an option to renew for an additional 10 years.

(b) The rental was $100 per month payable in advance on the first day of each month. If any installment of rent due was not paid within the 10 days from date of maturity, notice by registered mail should be given by Lessors, who might terminate the lease on 30 days notice if rent was not paid.

(c) Any permanent type structures placed on the land by Lessees during the term of the lease should not be removed at the termination of lease but were to become the property of Lessors.

(d) Lessees agreed to erect a 4 foot cyclone fence on steel posts from the south line to a point 10 feet north of the filling station building, and to use the premises for a general filling station business for motor vehicles.

It is agreed that Lessees entered upon the leased land and erected a permanent type filling station building and began business in November, 1952, but did not build the fence described and agreed to be built by them in the lease contract.

Early in May, 1953, C. C. Clanton had a contractor erect some steel posts 20 feet north of the filling station building. He claims that this was done under an agreement with Lessees who told him they were short of funds and could not erect the fence and agreed that it be erected by the Lessors and Lessees would surrender the leased land north of the fence.

About May 15, 1953, H. W. Bolding, Sr., told C. C. Clanton that the latter was taking leased ground without authority, declared the lease contract broken and demanded a new lease at one-half the current rental. The Clantons refused to make a new lease contract. This was the first notice they knew of H. W. Bolding, Sr.'s interest in the lease. The rent had been paid up to June 1, 1953.

On May 20, 1953, this action was filed by Lessees praying for actual damages in the sum of $8,500 and $5,000 punitive damages. Wrongful invasion of the leased premises and malicious invasion of the rights of Lessees and a constructive eviction from the leased premises were also alleged.

The Lessors answered by general denial and filed a cross-petition praying judgment for the rentals then due; alleged that Lessees had violated the lease agreement; prayed that the lease be cancelled and Lessors' title quieted and for possession of the land.

June 12, 1953, Lessors served notice of default in the payment of rent. June 30, 1953, the Lessees deposited $100 with the clerk of the District Court with a proviso that this sum was " * * * to be paid back to plaintiffs (Lessees) if they prevail and is subject to the order of the court if defendants (Lessors) prevail." No notice of this deposit was served on Lessees and no order of the court was made in regard thereto.

July 14, 1953, Lessors served Lessees with "30 days notice of termination clause" for non-payment of rent and to vacate the premises unless lease was reinstated. No rent was paid and on August 16, 1953, a "Notice to quit before action for Forceable Entry, etc." was filed according to 39 O.S. 1951 § 395, and was served on Lessees.

September 16, 1953, Lessors filed an action for possession in the Justice of the Peace Court. The Lessees answered and on September 22, 1953, judgment was rendered giving Lessors possession. Les-

sees appealed to the Court of Common Pleas, but on December 9, 1953, dismissed their appeal, making judgment for possession in the Justice of the Peace Court final.

Upon the trial of the present case, the court submitted the case to the jury which found that the Lessors were entitled to collect rent from June 1, 1953, to December 9, 1953, at $100 per month, or $630. The parties stipulated the issues to be submitted to the jury in a form of verdict. The jury found for the Lessors for $630 but found nothing for Lessees. The judgment cancelled the lease contract, cleared the title of Lessors and adjudged them to be the owners of all improvements placed on the leased premises by Lessees.

■■■ The Lessees have appealed and we will discuss the four propositions submitted in the order presented. In the first proposition it is claimed that:

"It is a necessary implication of every valid contract with covenants binding each party that neither will interfere to prevent performance by the other."

Under the above statement, the Lessees quote at length from the testimony of H. W. Bolding, Sr., to the effect that the Lessors wrongfully encroached upon the leasehold property and made normal operations of a filling station business impossible and destroyed the legitimate purposes of the lease. They ignored the testimony introduced by the Lessors which flatly contradicted the testimony relied upon by the Lessees.

There is ample competent evidence to sustain the findings of the jury and the court to the effect that Lessees were entitled to no damages whatever for the alleged interference by the Lessors in the operation of the filling station business. The jury found for the Lessors under their cross-petition and fixed their recovery at $630, the exact amount of rent that had not been paid while Lessors occupied and conducted their business upon the leased premises. Under the ruling of Smith v. Barry, 208 Okl. 606, 258 P.2d 165, and numerous other cases cited to the effect that where there is competent evidence to support the verdict of a jury and judgment based thereon such judgment will not be disturbed upon appeal.

■■■ The second proposition submitted is as follows:

"On breach of contract of lease by defendants and/or encroachment on property rights belonging to plaintiffs, acquired by said lease, these plaintiffs have right of recoupment for damages."

We find that the above proposition, like the first, is correct as an abstract proposition of law, but under the facts before us they are not applicable here. In response to the second proposition, Lessors counter with the well established rule that where errors in instructions are not specifically pointed out in conformity with Rule 15 of this Court, 12 O.S.A. c. 15, Appendix, and supported in the brief of the parties complaining, any errors in instructions will be treated as waived and cite in support thereof the case of Bredy v. Cantrell, 205 Okl. 9, 234 P.2d 381, and other cases. No complaint of instructions given or refused is urged in the brief of the Lessees and any complaint involving the instructions of the court must be considered as waived.

■■■ For their third proposition, Lessees submit:

"Any disturbance of tenant's possession by landlord whereby any part of leased property is rendered unfit for purposes for which it is demised amounts to constructive eviction and landlord is liable for damages resulting therefrom."

It is not disputed that from June 1, 1953, to December 9, 1953, the Lessees remained in possession of the leased premises and continued to conduct their filling station business. We find that as a matter of law, there can be no "constructive eviction" of a tenant without a surrender of possession by the tenant.

In the case of Baptist General Convention v. Wright, 136 Okl. 150, 276 P. 777, 782, this Court had before it these facts. The plaintiff sued Lessee for 9 months rent. The Lessee had occupied the building in-

volved from 1920 to April, 1924, but moved out before the expiration of their lease under the claim that heat and elevator service were so inadequate that they were forced to abandon the premises. This Court said in part in the body of the opinion:

"It is also true that at various and divers times during all these years and months of occupancy by defendant convention they were complaining that the heat furnished was inadequate; that they were disturbed in the beneficial enjoyment of the premises. Yet, during all these years defendant convention continued to hold possession of said premises until March 1, 1924, at which time they voluntarily vacated same.

"It is a well-settled principle of law that:

" 'There can be no constructive eviction without a surrender of the possession by the tenant; a tenant who continues to occupy the premises for an unreasonable length of time after the acts or omissions that constitute a constructive eviction waives the eviction, and cannot thereafter abandon the premises and assert it.' 36 C.J. 264.

" * * * 'The claim of conditions constituting an eviction which existed several months prior to removal, and which did not obtain at the time of removal, is insufficient to constitute in law an eviction or justify the abandonment of the leased premises under such claim.' Parke v. Proby, 130 Ill.App. 571."

■ Lessees contend that the premises were restored to Lessors in such a reasonable time as to amount to an abandonment and that their claim of constructive eviction should stand. On September 22, 1953, the Justice of the Peace judgment was rendered, holding that Lessees were unlawfully withholding possession of the premises from Lessors, and this judgment became final upon dismissal of their appeal in the Court of Common Pleas, and was thereafter binding upon all parties as to the issue of the right of possession. Texas Co.

v. Forson, 196 Okl. 599, 167 P.2d 877; Brown v. Higby, 191 Okl. 173, 127 P.2d 195.

In Abbott v. McCoy, 208 Okl. 224, 254 P.2d 997, 999, the Lessee sued the landlord for damages to his cafe business resulting from shutting off light, air and access to the place of business by placing barriers and building materials in such way as to almost bar entrance to the cafe. The Court said in part:

"The first question is that of plaintiffs' right to recover. Plaintiffs' case was tried and has been briefed on the sole theory that the defendant effected a constructive eviction of plaintiffs, causing them the alleged damages. But their right to recover is dependent upon the fact which is not here present. There can be no constructive eviction if the tenant remains in possession. Plaintiffs cannot recover for constructive eviction and at the same time seek to enforce their right to occupy the premises. * * *"

The Court then cited and quoted from the Baptist General Convention case, supra.

The Lessees here cite and quote from the case of Murry v. Merchants' Southwest Transfer & Storage Co., 98 Okl. 270, 225 P. 547, 549, as follows:

" * * * any disturbance of the tenant's possession by the landlord whereby the premises are rendered unfit or unsuitable for occupancy, in whole or in part, for the purposes for which they were leased, amounts to a constructive eviction, if the tenant so elects and surrenders his possession. * * *"

It will be noted that this Court in that case placed a proviso under the general rule as to constructive eviction, to the effect that it was applicable, " * * * if the tenant so elects and surrenders his possession."

■ There are also cases cited to the effect that constructive eviction may be established where the tenant abandons within a "reasonable time", but the facts before us show conclusively that the Lessees did not abandon the premises within a reasonable time before they claim that the encroachment of Lessors amounted to

a constructive eviction. They claim the wrongful action occurred mostly in April or May, 1953, but they apparently made no effort to abandon until December, 1953, and during all of these months they occupied the premises and continued to operate their filling station business.

We find no evidence in the record that the acts of the Lessors caused the Lessees, the loss of a single customer or the sale of a single gallon of gas, or that the volume of their business decreased by reason of any of the alleged wrongful acts of the Lessors.

The Lessees further submit that: "The actions of the Clantons constitute a forfeiture of the property of Bolding and Pruett."

Under this contention it is argued that under the judgment rendered, the Lessees were deprived of all of the property they had placed upon the leasehold. Their claim for actual damages appears to have covered the exact amount expended by them in improving the property with a building, pumps and other equipment used in their filling station business.

It is true that the law looks with disfavor upon forfeitures. Here the lease contract expressly provided in paragraph 11 that if the lease is terminated or expires, any permanent type of buildings placed on said land during the term of the lease or any renewal thereof, shall not be removed by Lessees but shall become the property of the Lessors.

This paragraph further provides that Lessees shall have the right during, and for the continuance of the lease, "* * * either to remove from or leave upon the leased premises any, all, or any part or parts of any fixtures, equipment and other property owned by the Lessees or placed on the leased premises by Lessees during the term, or any extension of this lease. * * *" There is no evidence of fixtures placed upon the lease or their value and no claim is made by the Lessees on account of fixtures placed upon the leasehold estate and not returned to them by the judgment of the court.

On June 30, 1953, the Lessors made a deposit with the court clerk of $100, with the following proviso:

"* * * This deposit is made to the court clerk to be held by the court clerk until this matter is determined, and that in the event that plaintiffs prevail, said sum shall be turned back to the plaintiffs, but in the event the defendants prevail, said sum shall be applied according to the Order of the Court."

Paragraph 5 of the lease itself provides in regard to a sufficient tender in the following language:

"* * * Lessors hereby agrees that the deposit by lessees of a valid bank check or draft in any United States Post Office duly addressed to the lessors, heirs, executors, legal representatives, successors, or assigns, shall be and constitute a good and sufficient tender of any sum of that may become due under this lease."

Under the foregoing provisions of the lease contract, we find that the tender made by the Lessees was not a legal tender and that the Lessors were justified in not accepting it after it was finally called to their attention.

We are of the opinion that the verdict of the jury and judgment of the court should be, and are hereby affirmed.

Pursuant to motion of the defendants in error for judgment on supersedeas bond, and it appearing that supersedeas bond signed by plaintiffs in error as principals and Clarence E. White, as surety, was filed and approved, and it further appearing that thereafter by agreement of the parties, H. W. Bolding, Sr., deposited with the Court Clerk the sum of $630.00 in cash to apply on the judgment rendered against him and his co-defendant, should said judgment be affirmed. It is therefore ordered that the Court Clerk pay defendants in error said sum of $630.00 to apply on said judgment and that the defendants in error have judgment against the principals and surety on the supersedeas bond for interest at the rate of 6 per cent per annum on the principal judgment from February 8, 1954, until paid and for costs.